## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

THOMAS J. WHITE,
    *Plaintiff*,

    v.

CITY OF BRIDGEPORT,
    *Defendant*.

No. 3:13-cv-1822 (JAM)
No. 3:12-cv-1744 (JAM)

### RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Thomas White worked for several years as the Legislative Services Director for defendant City of Bridgeport in Connecticut. But he lost his job when defendant eliminated the Legislative Services Director position in 2012. Although defendant claims that plaintiff lost his job because of budgetary reasons, plaintiff claims that defendant retaliated against him for his constitutional exercise of free speech. Plaintiff also claims that defendant violated his right to procedural due process by denying him a hearing to challenge the termination of his employment.

Plaintiff has moved for partial summary judgment on his due process claim, and defendant has cross-moved for summary judgment to dismiss all claims. Because I conclude that there are no genuine issues of fact or law to support plaintiff's claims, I will deny plaintiff's motion for summary judgment and grant defendant's motion for summary judgment.

### BACKGROUND

The Bridgeport City Council hired plaintiff as its Legislative Communications Director in 2006. In 2007, the Council changed his title to Legislative Services Director and made him part of the "classified service," a class of employees who could only be fired for cause.

In 2010, defendant claims it began investigating plaintiff on suspicion that he misrepresented his authority in seeking a salary study that could have increased his own pay. In September 2010, plaintiff's counsel received the following letter from the lawyer hired to conduct the investigation:

> As a courtesy to you, I am writing to inform you that the City Council intends to terminate Mr. White's employment for justifiable reasons which I am willing to speak to you in private about. Be assured, however, that the charges against Mr. White are severe and as an at-will employee he will in all likelihood be terminated. With that said, rather than engage in a prolonged termination process, I would like to offer your client the opportunity to resign, thereby permitting him to seek gainful employment elsewhere without a blemish on his employment record.

Doc. #41-6. Defendant acknowledges that this letter was sent but claims it was unauthorized, and there is no dispute that defendant did not pursue disciplinary charges against plaintiff.

About a year and a half later, the Council passed a budget in May 2012 that eliminated plaintiff's position effective June 30, 2012, and allocated most of the funds to hire a Legislative Liaison to perform clerical duties for the City Clerk's office.[1] Plaintiff received a letter on June 14 informing him of the layoff, although he was already aware of the budget vote. He did not request a pre-termination hearing.

At some point in October 2012, plaintiff spoke with Councilmember Michelle Lyons, and Lyons described the new Legislative Liaison as plaintiff's "replacement." Doc. #41-3 at 21. According to plaintiff, he concluded from this conversation that the budgetary reasons given for his termination were a sham. Not until December 2012—about six months after he lost his job

---

[1] Plaintiff asserts in his complaint that the new position had "a substantial number of the plaintiff's former duties." Doc. #1 ¶ 23. This claim, however, is not based on the personal knowledge of the plaintiff or any other evidence that would permit a rational jury to find that there was a substantial overlap in the duties of the new position and plaintiff's former position. In fact, plaintiff admits that the new clerk "does not perform any of the

and about two months after his conversation with Councilmember Lyons—did plaintiff request a post-termination hearing from the City of Bridgeport's Civil Service Commission.

The Commission did not decide whether to grant plaintiff a post-termination hearing for nearly another year until it convened on November 25, 2013. In connection with that meeting, a city attorney sent a letter to the Commission contending that the Commission had no jurisdiction to consider plaintiff's request for a hearing, because the Commission had no authority under the Bridgeport City Charter to review decisions of the city to layoff employees as deemed necessary by the mayor for budgetary reasons. Doc. #39-7 at 2-4. The attorney's letter noted that plaintiff had filed the instant federal lawsuit contesting his termination and contended that the appropriate forum for plaintiff's challenge to his termination was in federal court. *Id.* at 4.[2] The minutes of the Commission's meeting of November 25, 2013, reflect that the Commission credited the contentions of the city's attorney that it did not have jurisdiction and declined to hear plaintiff's appeal of his termination of employment. Doc. #39-8 at 2-4.

Plaintiff claims that his firing was a sham layoff and that the true reason that he was fired was because of his engaging in constitutionally protected speech. In support of this claim he identifies several interactions that he had with city council members.

The first such interaction came when Councilmember Robert Curwen wanted to attend a conference in 2007 (about five years before plaintiff's position was terminated). Curwen asked plaintiff to pay for the trip out of department funds because his personal stipend for such expenses had been exhausted. Plaintiff informed Curwen that it would be inappropriate to fund the trip that way. Curwen replied, "okay," and "[d]ropped it." Doc. #41-3 at 18 (plaintiff's deposition).

---

[2] Plaintiff initially filed this federal court action contending that he had been terminated in retaliation for the exercise of his constitutional right to free speech. He later filed a separate federal court action—now consolidated with the first action—raising a procedural due process challenge to his termination.

Two years later, in 2009, Curwen submitted a resolution to the Council that would have eliminated plaintiff's position. The Council never acted on the resolution. Plaintiff draws a connection between these two events, stating that "having seen [Curwen's] personality traits over some time, [plaintiff] found him to be vindictive with other people." *Id.* at 19.

The second interaction also related to Councilmember Curwen. In 2009, the FBI asked plaintiff to confirm that Curwen was a member of the Council, and plaintiff obliged. Sometime later, Curwen came to him and said, "If you have a problem with me, you should go and talk to me." Doc. #41-3 at 20. Plaintiff "sensed" that the reason Curwen said this to him was that "he resented that [plaintiff] would share any information that would reflect poorly on him." *Ibid.* He did not, however, have any specific reason to believe Curwen knew about his discussion with the FBI.

The third interaction occurred sometime in 2010 when Councilmember James Holloway—while allegedly intoxicated—twice confronted plaintiff. According to plaintiff, on both occasions Holloway said, "You are just a clerk," and said that he could eliminate plaintiff's employment. Doc. #41-3 at 23. Plaintiff reported these incidents to a city attorney, who cautioned Holloway not to make such statements. Plaintiff believes these incidents are connected to his firing because Holloway was one of the council members who suggested eliminatingfunding for his position in 2012.

Plaintiff further believes that he was fired in part because he raised concerns about council members voting on salary increases for city employees, which increases would also raise salaries for themselves. Although he has not identified a specific time period when he raised these concerns, plaintiff had at least one conversation in which he brought up that public

speakers had objected to the practice and said to Council President Thomas McCarthy that "it's a legitimate point." Doc. #41-3 at 40.

Finally, in 2012, plaintiff sent an email to Council President McCarthy. In the email, plaintiff expressed a concern that he could not verify that vendor payments for the council members' expenses were being charged to individual stipend accounts. McCarthy never responded to this email. Later that year, each city department met separately with the Council. When plaintiff's department met with the Council, he raised this concern again. Following this statement, plaintiff claims that Councilmember Susan Brannelly was "rather dismissive." At his deposition, plaintiff added the following about the Council's reaction to his statement: "[Brannelly was] the only one at the meeting who actually spoke up on that. I think they were just . . . tired of meeting with the departments and just didn't want to deal with it." Doc. #41-3 at 39. A few days later, as part of the same series of Council meetings, the budget was passed, and plaintiff's position was eliminated.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all

ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### *Free Speech Retaliation*

Plaintiff contends that his firing was a sham layoff, and that, in reality, he was fired in retaliation for his protected speech. He brings claims under 42 U.S.C. § 1983 and Conn. Gen. Stat. § 31-51q for retaliation in violation of free speech rights guaranteed under the First Amendment to the U.S. Constitution and comparable provisions of the Connecticut Constitution. In order to make out a *prima facie* case of free speech retaliation under either § 1983 or § 31-51q, a plaintiff must show that "(1) he engaged in protected First Amendment activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Smith v. Cnty. of Suffolk,* 776 F.3d 114, 118 (2d Cir. 2015) (*per curiam*); *see McClain v. Pfizer, Inc.*, 692 F. Supp. 2d 229, 241 (D. Conn. 2010) (describing same standard under § 31-51q). "To demonstrate a causal connection a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action." *Smith*, 776 F.3d at 118. Causation may be established either directly, by showing retaliatory animus, or indirectly, by showing that the protected activity was followed closely by the adverse action; a direct showing must involve "tangible proof of retaliatory animus, [and] conclusory assertions of retaliatory motive are insufficient." *Id.* at 118–19.[3]

---

[3] If a plaintiff makes out a *prima facie* case, a defendant may still avoid liability either by showing that "it would have taken the same adverse employment action even in the absence of the protected conduct," or by showing that "the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." *Smith*, 776 F.3d at 119; *see also McClain*, 692 F. Supp.

Plaintiff argues that the letter that he received in September 2010 that threatened to terminate his employment is evidence that defendant was seeking an opportunity to terminate his employment. Even if this is correct, it does not show—as plaintiff must do in order to sustain his claim of retaliation against his exercise of free speech—that defendant sought to terminate his employment because of plaintiff's protected speech activity. Moreover, the letter was issued nearly two years before plaintiff's position was eventually eliminated in June 2012.

Plaintiff has not otherwise established a triable issue of causation: that any of his protected speech activities were a motivating factor for defendant to terminate his position. Although some of the interactions plaintiff describes were undoubtedly unpleasant workplace events, he does not adduce sufficient facts to support a jury verdict that they caused the termination of his position. For example, when plaintiff told Councilmember Curwen that he could not use department funds to pay for his trip, plaintiff admits that Curwen "[d]ropped it" and said "okay." Doc. #41-3 at 29.

Similarly, plaintiff does not show a linkage between his statements about the impropriety of voting on salary increases and the decision to terminate his employment. As he characterizes the alleged conversations, they were personal and do not appear to have been contentious. Nor does plaintiff provide a timeframe for these conversations that might otherwise connect them to his termination. Further, in the confrontations with Councilmember Holloway, plaintiff does not identify any speech of his that was constitutionally protected. Holloway's alleged threats, from two years prior to his termination, do not give rise to an inference of free speech retaliation in the absence of protected speech that incited the threats in the first place.

---

2d at 241 (to support liability under § 31-51q, protected activity must "not interfere with the central purposes of the employment relationship"). Because I conclude that plaintiff has failed at the outset to show a triable issue with respect to whether any of his protected speech caused his termination, there is no need for me to consider these additional factors.

Plaintiff's statements to the Council about expense accounting were made just a few days before his position was eliminated in the budget. But the fact that plaintiff made *some* purportedly protected speech just before he lost his job is not enough to support an inference of causation. Plaintiff still must identify some reason that would suffice for a jury to connect these two events. Here, he made his statements regarding individual stipend accounts as a part of a series of meetings the Council had with each department. He made a brief presentation, stating that he was frustrated that he could not obtain documentation showing that the bills for the expenses of council members were being charged to individual accounts. Notably, he did not accuse any council member of misconduct, but merely sought documentation. Plaintiff argues that Councilmember Brannelly was "dismissive," but he also concedes that there was likely nothing untoward about this reaction: "I think they were just . . . tired of meeting the departments and just didn't want to deal with it." Doc. #41-1 at 52.

Even if the temporal proximity between these statements to the Council and his termination satisfied the causal link requirement, the statements did not relate to a matter of public concern. For speech to be protected in this context, it must relate to a matter of public concern. *See Smith*, 776 F.3d at 118; *Trusz v. UBS Realty Investors, LLC*, 319 Conn. 175 (2015) (interpreting Conn. Gen. Stat. § 31-51q).[4] Whether speech meets this standard is a question of law for the Court to determine, "in light of the content, form, and context of a given statement." *Golodner v Berlin*, 770 F.3d 196, 203 (2d Cir. 2014). A court should look to "the motive of the speaker," and speech may be on a matter of public concern if "the plaintiff wanted to debate issues of discrimination, … sought relief against pervasive or systemic misconduct by a public

---

[4] Because my resolution of the other factors is dispositive, I need not address the differences in the free speech protections provided by the federal and state constitutions with respect to whether a public employee's speech has been made pursuant to his or her job duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *Trusz*, 319 Conn. at 198-217 (disagreeing with *Garcetti* as matter of Connecticut constitutional law).

8

agency or public officials, or [the speech] was part of an overall effort to correct allegedly unlawful practices or bring them to public attention." *Ibid.*

Although plaintiff characterizes his complaints about reimbursements as relating to possible misconduct of public concern, their actual content as described in his deposition is mundane. His communications to the Council were that he could not verify that proper procedures were being followed to allocate funds to personal stipend accounts. On their face, these comments relate to preferred accounting practices, not wrongdoing. The statements did not contain an accusation of misconduct, and plaintiff provides no evidence to suggest they were interpreted that way. Indeed, he conceded at his deposition that he considered verifying the charges to be part of his job duties. Doc. #41-3 at 27.

There is little reason to think these statements were anything other than "communication by an employee to an employer in the course of the employee's normal duties, in routine form, and containing standard contents." *DeFilippo v. New York State Unified Court Sys.* 2006 WL 842400, at *16 (E.D.N.Y. 2006), *aff'd,* 223 F. App'x 45 (2d Cir. 2007). Such speech, concerning everyday workplace issues, is generally not a matter of public concern. *See id.*; *see also Cahill v. O'Donnell,* 75 F. Supp. 2d 264, 273 (S.D.N.Y. 1999) ("In this case, the plaintiffs were not attempting to bring to the public's attention [a] pervasive and systematic cover-up in Internal Affairs. Rather they simply exercised their duties, as Internal Affairs personnel, to investigate allegedly improper occurrences within the State Police, and to report their findings as requested.").

In short, there is no genuine issue of fact or law to show that any speech by plaintiff was the cause of any retaliation or, alternatively, that any such speech was on a matter of public

concern warranting protection under the First Amendment. Accordingly, I will dismiss plaintiff's free speech retaliation claims.

### *Procedural Due Process*

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amdt. 14, § 1. As the Supreme Court has explained, the "standard analysis" for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*); *see also Fusco v. State of Conn.,* 815 F.2d 201, 205 (2d Cir. 1987) (court must determine whether there was a property right, whether there was a deprivation of this right, and whether there was adequate process to justify deprivation of the right).

Here, defendant concedes that plaintiff was deprived of a protected property interest in his job as a member of Bridgeport's classified service. The only dispute concerns whether plaintiff received constitutionally adequate process to allow him to challenge the grounds for his termination.

Plaintiff contends that he was unconstitutionally denied both a pre-termination and a post-termination hearing. As to whether plaintiff was entitled to a pre-termination hearing, the Due Process Clause generally "requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *see also Todaro v. Norat*, 112 F.3d 598, 599 (2d Cir. 1997).  But where, as here, an employer claims to be eliminating the position "to make its operations more efficient," a pre-termination hearing is required only "if the employee protests

10

the notice of elimination of his position and contends that it is but a sham and pretext for the deprivation of his property right." *Dwyer v. Regan*, 777 F.2d 825, 833 (2d Cir. 1985), *as modified*, 793 F.2d 457 (2d Cir. 1986); *see also Knox v. Town of Southeast*, 599 Fed. App'x 411, 413 (2d Cir. 2015).

Plaintiff concedes that he never protested or requested a pre-termination hearing but contends that he did not have an adequate opportunity to do so. The facts do not support this argument. Plaintiff received ample notice prior to his termination; he received a formal letter advising of the termination of his position more than two weeks before its effective date, and plaintiff concedes that he was aware of the vote to terminate his position well before that. Plaintiff therefore had more than sufficient notice to request a pre-termination hearing. *See Knox*, 599 Fed. App'x at 413 (affirming grant of summary judgment on pre-deprivation hearing claim where plaintiff had six weeks notice of termination and "could have, but did not, request a hearing").

Plaintiff misplaces reliance on *Cifarelli v. Village of Babylon*, 894 F. Supp. 614 (E.D.N.Y. 1995). The court in that case held that a "few hours" notice before the employer voted to eliminate the plaintiff's position was insufficient. *Id.* at 621; *see also Doody v. Town of North Branford*, 972 F. Supp.2d 281, 289 (D. Conn. 2013) (plaintiff not required to request pre-termination hearing when first given notice of termination three days after the effective-date for termination of his employment). Importantly, however, the plaintiff in *Cifarelli* was fired effective immediately following the vote. Here, by contrast, plaintiff's employment did not end until several weeks after the Council vote. Because plaintiff had a fair opportunity to request a pre-termination hearing but did not do so, defendant had no obligation to provide him with a pre-termination hearing.

That brings me to whether plaintiff should have received a post-termination hearing. Even if a plaintiff does not request a pre-termination hearing, the Due Process Clause generally requires a post-termination hearing if a plaintiff requests one. *See, e.g., Wright v. City of Syracuse*, 611 F. App'x 8, 12 (2d Cir. 2015); *Dwyer*, 777 F.2d at 384. Indeed, the Second Circuit has emphasized that "the nature of a claim of sham [termination of employment] is such that a post-termination hearing will likely be more valuable to the claimant than a pre-termination hearing, since an after-the-fact transfer of the claimant's duties to a new employee would provide evidence of support of the claim of sham." *Ibid.*

Still, as *Dwyer* makes clear, in order to show a violation of the right to post-termination due process, a plaintiff must show that "the state courts did not afford a full and fair opportunity to adjudicate his claim of sham abolition of his position," or that, if the "state court proceedings would have been inadequate," that "he requested and was denied … an administrative post-termination on his claim of sham abolition." *Ibid.; see also Locurto v. Safir*, 264 F.3d 154, 174-75 (2nd Cir. 2001) (holding that an Article 78 proceeding under New York procedural law affords constitutionally adequate post-deprivation remedy for municipal employee to challenge the termination of his employment).

Here, even accepting that plaintiff did not receive an administrative hearing before the Commission to allow him to challenge the termination of his employment, he has not shown as required by *Dwyer* that he had no adequate state judicial remedy available to him. To be sure, defendant does not cite any Connecticut state law that specifically creates a right to an administrative appeal from an adverse employment decision of a municipality. But Connecticut courts have recognized—precisely in light of constitutional due process concerns—that "[t]he absence of an express appeal provision does not foreclose other forms of judicial relief where

appropriate" and that "an aggrieved plaintiff may bring a plenary action, rather than an administrative appeal, against the appropriate officials or municipality in order to obtain judicial review of their actions." *October Twenty-Four, Inc. v. Planning & Zoning Comm'n of Town of Plainville*, 35 Conn. App. 599, 609 (1994); *Brown v. City of Hartford*, 160 Conn. App. 677, 688 (2015) (same); *see also State v. Vachon*, 140 Conn. 478, 485-86 (1953) (noting that "[i]t is not essential to the constitutionality of a statute which authorizes an administrative board to make orders or grant licenses that it contain a provision for an appeal, in the technical sense, from the board's action," because "[i]f any person claims to be harmed by such an order, his constitutional right to due process is protected by his privilege to apply to a court"); *Diaz v. Bd. of Directors of 1967 Police Pension Fund of Danbury*, 2 Conn. App. 43, 48 (1984) (noting that "where an appeal is improper, a party is not without recourse to protect any claimed property interest from unconstitutional deprivation or impairment" and that municipal employee who "claims a property interest in the pension benefits" and who "alleges a capricious and arbitrary deprivation of that interest" has right of "recourse" to the courts); *Durgin v. Town of Madison*, 2010 WL 745620, at *1 (Conn. Super. 2010) (Lager, J.) (state court has "plenary action" jurisdiction in absence of statutory administrative appeal procedure to review police officer's claim that municipality wrongfully denied his application for disability retirement pension).

As noted above, the Second Circuit has ruled in *Locurto v. Safir* that the Due Process Clause is satisfied by the availability of an Article 78 proceeding under New York law, because through such a proceeding "the state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator." 264 F.3d at 174. It is true that *Locurto* has been subject to criticism, *see Hallsmith v. City of Montpelier,* 125 A.3d 882, 891-92 & nn. 11-12 (Vt. 2015), and is arguably in tension with the Seventh Circuit's decision in *Baird v. Board of*

*Education*, 389 F.3d 685, 692–93 (7th Cir. 2004) (concluding that "[a] state law breach of contract action is not an adequate post-termination remedy for a terminated employee who possesses a present entitlement and who has been afforded only a limited pre-termination hearing"); *see also Hallsmith*, 125 A.3d at 892 (following *Baird* rather than *Locurto*).

Nevertheless, I remain bound both by *Dwyer* and *Locurto*, which precedents remain good law. *See, e.g., Hand v. New York City Hous. Pres. & Dev. Div. of Code Enf't,* 605 Fed. Appx. 42, 44 (2d Cir. 2015); *Tessler v. Paterson*, 451 Fed. Appx. 30, 33 (2d Cir. 2011).

Whether or not Connecticut law has a precise statutory equivalent to an Article 78 proceeding under New York law, it is clear to me from the multiple decisions of the Connecticut state courts that are cited above that the state courts of Connecticut would have entertained a "plenary action" by plaintiff to challenge his termination as without "just cause," and there is nothing to suggest that the Connecticut state courts would not have allowed plaintiff a full adversarial hearing to contest his termination. *See Locurto*, 264 F.3d at 175  ("No reason exists to depart from the general presumption that a judicial trial represents the epitome of full process."); *see also McMahon v. City of Middletown,* 2013 WL 6038261 at *4 (Conn. Super. 2013) (concluding that, notwithstanding lack of statutory appeal procedure, deputy police chief seeking to challenge as without just-cause a town's termination of his employment "may still bring plenary action against the defendant to obtain judicial review of its action" and that for a plenary action "the merits of the case are fully inquired into and determined"); *McMahon v. City of Middletown*, 2015 WL 1427916 (Conn. Super. 2015) (denying defendant's motion for summary judgment).

In short, plaintiff was not denied his right to procedural due process to challenge the termination of his employment. He did not request a pre-deprivation hearing despite adequate

opportunity to do so. Although he was deprived of a post-deprivation administrative hearing, he was ultimately not deprived of due process because he retained the opportunity to seek appropriate relief in state court and therefore had available to him all the process that was constitutionally due.

## CONCLUSION

Plaintiff's motion for partial summary judgment (Doc. #37) is DENIED, and defendant's motion for summary judgment (Doc. #41) is GRANTED.

It is so ordered. The Clerk of Court shall enter judgment and close this case.

Dated at New Haven this 23rd day of March 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge